UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| POOR BOY TREE SERVICE INC ET AL | CIVIL ACTION NO. 22-2199 |
| VERSUS | JUDGE EDWARDS |
| CITY OF WINNFIELD | MAG. JUDGE PEREZ-MONTES |

### MEMORANDUM RULING

Before the Court is a Motion for Summary Judgment[1] filed by Defendant City of Winnfield ("Defendant"). Plaintiffs, Poor Boy Tree Services, Inc. ("Poor Boy") and Mobile Help 4U, Inc. ("Mobile Help") (collectively "Plaintiffs") filed an opposition to the motion,[2] and Defendant replied.[3]

### I. BACKGROUND

On August 27, 2020, Hurricane Laura made landfall in Louisiana, causing significant damage as it passed through the city of Winnfield.[4] Laura, a Category 4 hurricane with sustained winds of 150 miles per hour, remained at hurricane strength while impacting the city.[5] In the immediate aftermath, Ty Bewley—the owner and operator of Poor Boy and Mobile Help, two Missouri-based corporations—traveled across Louisiana offering cleanup and recovery services.[6]

---

[1] R. Doc. 38.
[2] R. Doc. 41.
[3] R. Doc. 42.
[4] R. Doc. 1 at 1.
[5] R. Doc. 38-1 at 6.
[6] R. Doc. 38-1 at 6.

After visiting other municipalities, Mr. Bewley arrived in Winnfield.[7] He communicated with at least one city employee, John Paul, via text message regarding bringing work crews to the city.[8] Bewley also appears to have sent text messages to the city's Chief of Police.[9] After arrival in the city, Plaintiffs began performing work.[10]

The parties both agree that no written contract was ever executed between the Plaintiffs and the Defendant.[11] Additionally, it is not disputed that the City Council of Winnfield never voted to authorize a contract with Plaintiffs, nor did it authorize any city employee or official to enter into a contract on the city's behalf.[12]

Following their work, Plaintiffs submitted invoices to Defendant totaling over $1,120,000.[13] Poor Boy invoiced the city for $714,369.51, while Mobile Help invoiced $406,468.94.[14] Plaintiffs' invoices also included a 2% monthly service charge.[15]

Plaintiffs filed suit against Defendant on July 21, 2022, for breach of a contractual relationship and seeking recovery under an open account theory pursuant to La. R.S. 9:2781.[16] Defendant now moves for summary judgment, asserting that no contract, written or otherwise, was ever formed between the parties.

---

[7] R. Doc. 38-1 at 6.
[8] *Id.*
[9] *Id.*
[10] R. Doc. 1 at 1–2.
[11] R. Doc. 38-1 at 11; R. Doc. 41 at 9.
[12] R. Doc. 38-1 at 7; 38-2 at 1.
[13] R. Doc. 1 at 3.
[14] *Id.*
[15] *Id.*
[16] R. Doc. 1 at 1.

## II. LEGAL STANDARD

Summary judgment is appropriate when the evidence shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[17] "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[18] "A dispute is genuine if the summary judgment evidence is such that a reasonable jury could return a verdict for the [non-movant]."[19] In evaluating a motion for summary judgment, the court "may not make credibility determinations or weigh the evidence" and "must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party."[20]

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."[21] "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim."[22] Thereafter, if the non-

---

[17] Fed. R. Civ. P. 56(a).
[18] *Hyatt v. Thomas,* 843 F.3d 172, 177 (5th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).
[19] *Id.* (internal quotations omitted).
[20] *Total E&P USA Inc. v. Kerr-McGee Oil & Gas Corp.*, 719 F.3d 424, 434 (5th Cir. 2013) (internal citations omitted).
[21] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting *Anderson*, 477 U.S. at 247).
[22] *Stahl v. Novartis Pharm. Corp.,* 283 F.3d 254, 263 (5th Cir. 2002).

movant is unable to identify anything in the record to support its claim, summary judgment is appropriate.[23]

### III. PARTIES' ARGUMENTS

Defendant argues that Plaintiffs' claims fail as a matter of law because any alleged contract between the parties was not properly authorized under the Lawrason Act, La. R.S. 33:362. Defendants contend Plaintiffs' contract claim fails because there was no contract between the Defendant and the Plaintiffs. Both parties agree there was no written contract; however, Defendants further assert that there was no oral contract whereas the Plaintiffs argue there was one. Further, Defendants argue that Plaintiffs' invoices do not qualify as an open account under Louisiana law.

Conversely, Plaintiffs argue in response that a valid and enforceable contract exists between the City of Winnfield and their corporations, even though no formal written contract was signed. They assert that a verbal agreement was reached between the former Mayor, George Moss, and Ty Bewley of the complainant corporations, and that Mayor Moss acknowledged the obligation through emails and ongoing invoices. Plaintiffs argue that oral contracts are allowed under Louisiana law, particularly in emergency situations, and they reference the Louisiana Homeland Security and Emergency Assistance and Disaster Act and the Public Bid Law, which provide exceptions for such circumstances. Finally, Plaintiffs also challenge the city's claim that the invoices do not qualify as an open account,

---

[23] *Id.*

asserting that the wide-ranging nature of the services provided and the ongoing communications between the parties create sufficient evidence of an open account.

## IV. LAW & ANALYSIS

### a. Consent

The requirements for a valid contract are: (1) capacity; (2) consent; (3) a lawful cause; and (4) a valid object.[24] The burden of proof in an action for breach of contract is on the party claiming rights under the contract.[25] The only element made issue by the parties pleadings is of consent. A contract is formed by the consent of the parties established through an offer and acceptance.[26] "Unless the law prescribes a certain formality for the intended contract, offer and acceptance may be made orally, in writing, or by action or inaction that under the circumstances is clearly indicative of consent."[27]

In their opposition, Plaintiffs state "Mayor George Moss entered into a verbal contract with the City of Winnfield, which was later acknowledged via the emails attached to the city's Motion for Summary Judgment."[28] The Court read the emails between representatives of the city, including Mayor Moss, and representatives of Poor Boy and Mobile Help. Two remarks from city representatives are noteworthy. In a December 31, 2020 email responding to Poor Boy's office manager, Patty Sullivan, Winnfield City Clerk Katina Smith wrote, "Patty, we are awaiting

---

[24] See La. C.C. arts. 1918, 1927, 1966, 1971; *Granger v. Christus Health Central Louisiana*, 12-1892 (La. 6/28/13), 144 So.3d 736, 760-61.
[25] La. C.C. art. 1831; *Hornbeck Offshore Operators, LLC v. Cross Group, Inc.*, 16-0174 (La. App. 1st Cir. 10/31/16), 207 So.3d 1141, 1146, writ denied, 16-2095 (La. 1/9/17), 214 So.3d 872.
[26] La. C.C. art. 1927.
[27] La. C.C. art. 1927.
[28] R. Doc. 41 at 5.

assistance from FEMA to be able to pay this bill."[29] Then, after several more requests for payment by Poor Boy, then-Mayor Moss emailed on January 18, 2021, stating, "I just wanted to give you all an update on where we are with FEMA. We are currently at the disaster inventory phase with FEMA on our request for public assistance… We believe things are now moving forward in a positive way and hope to be receiving some funds soon."[30] These series of interactions create a genuine issue of material fact as to whether the parties consented to the work done by Plaintiffs in the aftermath of Hurricane Laura. While neither communication expressly confirms the existence of a contract, both suggest that city officials—including the Mayor and City Clerk—were aware of the work performed and did not repudiate it. Instead, their responses focus on the anticipated receipt of FEMA funds to satisfy the outstanding invoices. At the summary judgment stage, the Court must view the evidence in the light most favorable to the non-moving party. Given the Defendant's consistent engagement with Plaintiffs regarding payment and the absence of any evidence that a contemporaneous objection to the work performed was made, there exists a triable issue as to whether there was a "meeting of the minds." Accordingly, summary judgment on this element of contract formation is inappropriate.

    b. **Lawrason Act**

- **Are there disaster exceptions to the Lawrason Act that would allow the mayor to bind the city contract without prior approval by the city council?**

---

[29] R. Doc. 38-4 at 5-6.
[30] R. Doc. 38-4 at 2.

Assuming *arguendo* that a meeting of the minds occurred between certain officials of the City of Winnfield—such as then-Mayor Moss—and the Plaintiffs, the Defendant argues that such consent is insufficient to create a binding contract as a matter of law. According to Defendant, the Lawrason Act, La. R.S. 33:362, requires that for a municipality organized under its provisions—like the City of Winnfield—the legislative powers are vested exclusively in a board of aldermen, and before the municipality may bind itself in contract, the city council/board of aldermen must first authorize the contract.[31] Thus, even if Mayor Moss intended to enter into an agreement, and even if Plaintiffs believed a contract had been formed, that intent cannot bind the municipality unless the contract was properly authorized in accordance with the Lawrason Act.[32] Specifically, when a contract involves the expenditure of public funds, both the mayor and the board of aldermen must concur, and only then may the mayor execute the agreement on the municipality's behalf.[33] Defendants then go on to present caselaw supporting the conclusion that a mayor acting in contravention of the Lawrason Act is without power to execute a contract binding on the city.[34]

It is undisputed that the Winnfield city council did not authorize any contract between Plaintiffs and the City. Nevertheless, Plaintiffs offer several arguments as to why their claims should survive. Chief among them is their reliance on emergency

---

[31] R. Doc. 38-1 at 11.
[32] *Id.*
[33] *Id.* at 11-12.
[34] *Id.* Citing *Smith v. Town of Vinton,* 209 La. 587, 597 (1946); *see also Sunray Servs., Inc. v. City of Minden,* 29,260, p. *5* (La. App. 2 Cir. 2/28/97); 690 So.2d 970, 973 (same), *Daspit v. City of Alexandria,* 342 So.2d 683 (La. App. 3rd Cir. 1977) (same), La. Atty. Gen. Op. No. 98-438 (La. A.G.), 1998 WL 842623.

circumstances and two statutes they claim provide flexibility during declared disasters: the Louisiana Homeland Security and Emergency Assistance and Disaster Act ("LHSEADA") and the Louisiana Public Bid Law. The Court addresses each in turn.

First, in their Opposition, Plaintiffs cite to a provision of LHSEADA which provides:

> [W]henever a situation develops within or outside of a municipality which the chief executive officer of the municipality determines requires immediate action to preserve the public peace, property, health, or safety within the municipality or to provide for continued operation of municipal government, nothing in this Chapter shall diminish the authority of the chief executive officer of the municipality to undertake immediate emergency response measures within the municipality to preserve the public peace, property, health, or safety within the municipality or to provide for continued operation of the municipal government.[35]

Plaintiffs contend that this provision authorized Mayor Moss to bind the City by contract during the emergency created by Hurricane Laura, without obtaining prior approval from the board of aldermen.[36] However, this argument overreads the statute. The key limiting phrase—"nothing in this Chapter"—makes clear that the provision only exempts municipal executives from other constraints found *within the LHSEADA itself* (Title 29), not from broader statutory restrictions such as those contained in the Lawrason Act (Title 33). On a plain reading of the statute, the Court cannot find that it provides an exception to the Lawrason Act's requirements.

---

[35] La. R.S. 29:737
[36] R. Doc. 41 at 10.

Next, the Plaintiffs argue Louisiana's Public Bid Law (La. R.S. 38:2212), which requires all public work exceeding $250,000.00 to "be advertised and let by contract to the lowest responsible and responsive bidder,"[37] provides for oral contracts in emergent circumstances.[38] Plaintiffs point to La. R.S. 38:2212 P(2)(b) as an exception to the Lawrason Act highlighting where the subsection reads "[w]hen contract action under this authority is taken pursuant to telephone or other oral offers, a written confirmation of the accepted offer shall be obtained and made a part of the contract case file."[39] Plaintiffs argue that because oral offers are accepted under the Louisiana's Public Bid Law in emergent circumstances, then the general provisions of the Lawrason act are superseded.[40] This legal argument is unavailing when applied to the facts. Even if the Court were to agree with this purported public bid law loop-hole to the Lawrason act, it would not support Plaintiffs' claim because there is no written confirmation that the city accepted an oral offer from Plaintiffs.

### c. Open Account Claim

Under Louisiana law, an open account includes "any account for which a part or all of the balance is past due, whether or not the account reflects one or more transactions and whether or not at the time of contracting the parties expected future transactions."[41] Because the open account statute authorizes the recovery of

---

[37] La. R.S. 38:2212.
[38] R. Doc. 41 at 12.
[39] R. Doc. 41 at 12.
[40] *Id.*
[41] La. R.S. § 9:2781(D).

attorney's fees, it must be construed strictly.[42] A "hallmark of an open account is that the total cost, unlike a contract, is generally left open or undetermined, although the rate for specific services may be fixed, such as an hourly rate."[43]

In determining whether a transaction constitutes an open account, courts consider several factors: "(1) whether there were other business transactions between the parties; (2) whether a line of credit was extended by one party to the other; (3) whether there are running or current dealings; and (4) whether there are expectations of other dealings."[44] The Fifth Circuit recognizes "[a]n open account ... requires an ongoing relationship with an extension of credit to the debtor."[45] Open accounts typically arise where "a line of credit is running and is open to future modification because of expectations of prospective business dealings, and services are recurrently granted over a period of time."[46]

Here, Plaintiffs argue that their relationship with the city qualifies as an open account under these standards. They contend that their work was not confined to a single transaction, but instead spanned multiple service categories—power generation, fuel delivery, debris removal, and temporary housing—performed in the aftermath of Hurricane Laura.[47] According to Plaintiffs, these services were provided at the city's request and were accompanied by informal, ongoing communications,

---

[42] *Ormet Primary Aluminum Corp. v. Ballast Techs., Inc.*, 436 F. App'x 297, 300-01 (5th Cir. 2011) (quoting *Frank L. Beier Radio, Inc. v. Black Gold Marine, Inc.*, 449 So. 2d 1014, 1015-16 (La. 1984)).
[43] *Id.* at 301.
[44] *Precision Cooling Towers Inc. v. lndorama Ventures Ole.fins LLC,* 695 F.Supp.3d 762, 767 (W.D. La. 2023) (citing *Cambridge Toxicology Grp., Inc. v. Exnicios,* 495 F.3d 169, 174 (5th Cir. 2007)).
[45] *Cambridge Toxicology Grp., Inc. v. Exnicios,* 495 F.3d 169, 174 (5th Cir. 2007); *see also Precision Cooling Towers Inc.*, 695 F.Supp.3d at 767 (W.D. La. 2023).
[46] *Signlite, Inc. v. Northshore Serv. Ctr., Inc.*, 959 So. 2d 904, 907 (La. App. 1 Cir. 2007).
[47] R. Doc. 41 at 14-15.

including repeated questions from city officials such as "[c]an you get this?"[48] Plaintiffs also claim they extended a line of credit by furnishing services in advance of payment and assert that they updated the city on the account's status before final invoicing.[49] They contend that these facts reflect a fluid, ongoing commercial relationship and support the existence of an open account.

Nevertheless, the analysis of the factors weighs against Plaintiffs' claim:

### i. Other Business Transactions Between the Parties

While Plaintiffs provided multiple types of services, all services were rendered within a single, finite context—post-disaster response in the immediate aftermath of Hurricane Laura. There is no evidence of prior dealings between the parties before this event, nor any independent or unrelated business transactions outside of this specific incident.

### ii. Extension of Credit

Without any evidence of other unrelated business transactions, or current and future business dealings as discussed hereafter, there is no factual support for the argument that the parties had the type of ongoing relationship necessary to conclude that the Plaintiffs extended a line of credit to the city for the services provided.

### iii. Running or Current Dealings

At the time of suit, there were no ongoing dealings between Plaintiffs and the city. While Plaintiffs argue that their services were rendered over a span of days or weeks and involved multiple requests, all such dealings were confined to a single

---

[48] *Id.* (Plaintiffs did not cite to exhibits or the record while making this assertion).
[49] *Id.*

timeframe and a discrete emergency. This is not the kind of "running account" characterized by periodic, indefinite services over an extended period.[50]

### iv. Expectations of Future Dealings

There is no evidence that either party reasonably expected future business dealings once the disaster response ended. Plaintiffs argue that, had another emergency occurred, the city might have requested further services—but such speculative, hypothetical possibilities are insufficient to satisfy this element. The record supports only that Plaintiffs were retained, if at all, for an isolated and urgent post-storm engagement, not for an ongoing commercial relationship.

Accordingly, the Court concludes that Plaintiffs have failed to establish the existence of an open account under Louisiana law. Even accepting Plaintiffs' factual assertions as true, the record reflects a finite transaction for emergency services tied to a single event, rather than the kind of indefinite, credit-based, and recurring dealings contemplated by La. R.S. § 9:2781.

The Fifth Circuit has recognized that, courts are split as to whether a party must demonstrate the existence of a contract to recover on an open account claim in Louisiana.[51] But in this case, regardless of that question, the Court finds that the

---

[50] *See Sweeping Corp. of Am., LLC v. MDL Enters., LLC*, 2024 WL 5165177 (E.D. La. May 7, 2024) ("the contract was for the provision of services at a specific event, the Mardi Gras celebration in New Orleans in 2022, suggesting that it was not 'open to future modification because of expectations of prospective business dealings, and services [were not] recurrently granted over a period of time.' *Signlite, Inc.*, 959 So. 2d at 907; *see also 24/7 Restoration Specialists, LLC v. Young*, 634 F. Supp. 3d 287, 291 (E.D. La. 2022)").

[51] *Louisiana Newpack Shrimp Co., Inc. v. Indigo Seafood Partners, Inc.*, 2023 WL 5316473, at *3 (5th Cir. 2023) (per curiam) (citing authority).

relationship between the parties fails to meet the legal requirements of an open account.

### d. Unjust Enrichment

The Court directed the parties to brief whether unjust enrichment is available as theory of recovery for Plaintiffs. Unsurprisingly, Plaintiffs say yes, and the Defendant says no. The Defendant is correct. A claim for unjust enrichment can only be sustained when there is "no other remedy at law available to the plaintiff."[52] The Louisiana Supreme Court has held that "no other remedy" does not mean that unjust enrichment is available whenever the plaintiff fails to prevail under their asserted claims – as here. "No other remedy" means the plaintiff has no other legal theory by which to assert a claim at all.[53]

## V. CONCLUSION

Although the Court finds that there is a genuine dispute regarding whether there was a meeting of the minds, this dispute is not material because Plaintiffs' claims fail as a matter of law. The alleged contract between the parties was not properly authorized under the Lawrason Act, La. R.S. 33:362. Further, the requirements to establish an open account are not present. Unfortunately, Plaintiffs' failed contract and open account claims do not confer upon them a new claim for unjust enrichment.

---

[52] *JP Mack Industries LLC v. Mosaic Fertilizer, LLC*, 970 F. Supp. 2d 516, 521; La. C.C. art. 2298.
[53] *Id.* (citing *Walters v. MedSouth Record Mgmt., LLC,* 38 So.3d 214, 242 (La. 6/4/10) ("the mere fact that a plaintiff does not successfully pursue another available remedy does not give the plaintiff the right to recover under the theory of unjust enrichment."))

For the foregoing reasons, the Motion for Summary Judgment will be granted.

A Judgment consistent with this Ruling will be issued accordingly.

**THUS DONE AND SIGNED** in Chambers this 29th day of September 2025.

                                              **JERRY EDWARDS, JR.**
                                              **UNITED STATES DISTRICT JUDGE**